UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ANTHONY WADE HUFF,

                Petitioner,

vs.                            Case No. 3:09-cv-399-J-34TEM

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

**<u>ORDER</u>**

**<u>I. Status</u>**

       Petitioner Anthony Wade Huff initiated this action by filing a <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on January 23, 2009, pursuant to the mailbox rule. He challenges a state court (Baker County, Florida) judgment of conviction for manslaughter on two grounds. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. #21); Exhibits (Resp. Ex.) (Docs. #14, #21). On June 19, 2009, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #11), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on November 5, 2010. <u>See</u> Petitioner's

Reply to Respondents' Answer to Order to Show Cause (Reply) (Doc. #24). This case is ripe for review.

## II. Procedural History

On November 27, 2001, the State of Florida charged Anthony Wade Huff with manslaughter. Resp. Ex. C, Information. On September 9, 2002, Huff entered a nolo contendere plea to the charge of manslaughter. Resp. Ex. D; Resp. Ex. V, Transcript of the September 9, 2002 Plea Proceeding (Plea Tr.); Resp. Ex. W, Transcript of the October 14, 2002 Hearing. On October 28, 2002, the trial court adjudicated Huff guilty of manslaughter and sentenced him to one year of jail time and ten years of drug offender probation. Resp. Exs. E; F; G. Huff did not appeal his conviction and sentence.

After violations of probation, see Resp. Exs. H; I; J, Huff entered a "best interests" plea of admission on August 9, 2004. Resp. Ex. K. As a result of those violations, pursuant to an agreement with the State, the trial court modified Huff's probation conditioned upon completion of a residential substance abuse treatment program. Resp. Exs. K; L.

On October 9, 2006, Huff entered a plea of nolo contendere as to additional violations of probation. Resp. Exs. M; N; O; P; Q; AA, Transcript of the October 9, 2006 Violation of Probation Proceeding (VOP Tr.). As a result of those additional violations, pursuant to an agreement with the State, the trial court revoked

Huff's probation and sentenced him to ten years and eight months of incarceration, which is the sentence that he is currently serving. Resp. Exs. Q; S, Order of Revocation; Y, attached exhibit 5, Judgment, filed October 9, 2006; VOP Tr. at 37; <u>see</u> http://www.dc/state.fl.us/ActiveInmates (website for the Florida Department of Corrections).

On October 22, 2006, Huff filed a <u>pro</u> <u>se</u> Motion to Reduce or Modify Sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). Resp. Ex. T. The trial court denied the motion on December 13, 2006. Resp. Ex. U. Huff then filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on May 23, 2007. Resp. Ex. X. In his request for post conviction relief, Huff asserted that his counsel (George R. Hedrick, III, Assistant Public Defender) was ineffective because: (1) he failed to object and/or ensure that a factual basis for the plea was articulated on the record before the court accepted the plea on September 9, 2002, and (2) during the plea colloquy, he failed to inform Huff of the charge and maximum penalty and the rights Huff would give up if he entered the plea. The trial court summarily denied the motion on July 25, 2007. Resp. Ex. Y. Petitioner did not appeal the court's denial.

Huff filed a second <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on October 29, 2007. Resp. Ex. AA at 1-38. In his request for post conviction

relief, Huff asserted that (1) the court improperly revoked his probation because the original sentence was based on an unlawfully entered plea agreement; (2) the violation of probation was founded on insufficient circumstantial evidence; and (3) Huff's plea of admission during the violation hearing was involuntarily entered. Additionally, Huff claimed that counsel was ineffective because he: (1) gave "insufficient advice" as to how much time Huff would actually serve; (2) failed to present mitigation evidence in the sentencing phase; (3) failed to suppress illegally obtained evidence; (4) failed to impeach adverse witnesses; (5) failed to disclose a conflict of interest; (6) failed to object to prosecutorial misconduct; and (7) failed to move to withdraw Huff's plea of nolo contendere. Finally, Huff claimed that the cumulative effect of counsel's deficiencies prejudiced his case. The trial court denied the motion on December 12, 2007. <u>Id</u>. at 39-74.

On October 15, 2008, the appellate court affirmed the circuit court's denial in part and reversed and remanded it in part to allow Huff an opportunity to amend his facially insufficient claim (that trial counsel was ineffective for failure to move to withdraw his no contest plea) pursuant to <u>Spera v. State</u>, 971 So.2d 754 (Fla. 2007). <u>Huff v. State</u>, 991 So.2d 1036 (Fla. 1st DCA 2008) (per curiam); Resp. Ex. BB. The mandate issued on October 31, 2008. Resp. Ex. CC. On remand, Huff filed a <u>pro</u> <u>se</u> amended motion for post conviction relief pursuant to Florida Rule of Criminal

Procedure 3.850 on January 30, 2009.  Resp. Ex. HH.  In the request

for post conviction relief, Huff asserted that counsel was

ineffective because she (Julie C. Johnson, Assistant Public

Defender) failed to: (1) file a motion to withdraw the plea, which

was allegedly entered as a result of counsel's misadvice; (2) move

for a competency hearing; and (3) file a motion to withdraw the

plea when the violation of probation was neither willful nor

substantial.  Id.  On June 10, 2009, the trial court denied the

Rule 3.850 motion.  Resp. Ex. II.  Petitioner did not appeal the

denial.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of

limitations.  See 28 U.S.C. § 2244(d); Order (Doc. #18), filed May

21, 2010; Response at 15.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a

federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if

true, would entitle the applicant to federal habeas relief."

Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).

"It follows that if the record refutes the applicant's factual

allegations or otherwise precludes habeas relief, a district court

is not required to hold an evidentiary hearing."  Id.  The

pertinent facts of this case are fully developed in the record

before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and

> mixed questions of law and fact are
> reviewed <u>de</u> <u>novo</u>, as is the district
> court's conclusion regarding the
> reasonableness of the state court's
> application of federal law.
>
> <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted). In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." <u>Williams</u>, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[1]
> 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir.), <u>cert</u>. <u>denied</u>, 131

S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. <u>Harrington v. Richter</u>, 131 S.Ct. 770,

785 (2011) (holding that § 2254(d) does not require a state court

to give reasons before its decision can be deemed to have been

---

[1] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." <u>Bui v.
Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.[2] A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." <u>Id</u>., at 687, 104
S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance
claims concerning both the decision to accept a guilty plea offer
and the decision to forgo a plea offer and stand trial. <u>Hill v.
Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-
part <u>Strickland</u> test must be satisfied to show a Sixth Amendment
violation, "a court need not address the performance prong if the
petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>,
592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s
high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788
(quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is
accorded great deference. "The standards created by <u>Strickland</u> and
§ 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104
S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct.

---

 2 In the context of an ineffective assistance challenge to the
voluntariness of a guilty or no contest plea, Petitioner must show
there is a "reasonable probability that, but for counsel's errors,
he would not have pleaded guilty and would have insisted on going
to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[3], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the Strickland standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." Schriro, supra, at 473, 127 S.Ct.
> 1933. And, because the Strickland standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> See Yarborough v. Alvarado, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review:

> Before bringing a § 2254 habeas action in
> federal court, a petitioner must exhaust all
> state court remedies that are available for
> challenging his state conviction. See 28
> U.S.C. § 2254(b), (c). To exhaust state

---

[3] Knowles v. Mirzayance, 129 S.Ct. 1411 (2009).

> remedies, the petitioner must "fairly
> present[]" every issue raised in his federal
> petition to the state's highest court, either
> on direct appeal or on collateral review.
> Castille v. Peoples, 489 U.S. 346, 351, 109
> S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989)
> (emphasis omitted). Thus, to properly exhaust
> a claim, "state prisoners must give the state
> courts one full opportunity to resolve any
> constitutional issues by invoking one complete
> round of the State's established appellate
> review process." O'Sullivan v. Boerckel, 526
> U.S. 838, 845, 119 S.Ct. 1728, 1732, 144
> L.Ed.2d 1 (1999).

Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009) (per curiam),

petition granted in part, 131 S.Ct. 1718 (U.S. Mar. 21, 2011) (No.

09A974, 10-63).

Procedural defaults may be excused under certain

circumstances: "[n]otwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the

claim if a state habeas petitioner can show either (1) cause for

and actual prejudice from the default; or (2) a fundamental

miscarriage of justice." Id. at 890 (citations omitted). In order

for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S.Ct. at 2649.[4] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Id</u>. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>,

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Huff claims that his conviction is a fundamental miscarriage of justice because he is actually innocent of manslaughter.[5] Respondents contend, and this Court agrees, that the claim is procedurally barred since Huff never presented the claim to the state courts. See Response at 14-15. Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. And, even assuming the claim is not procedurally barred, such a free-standing actual innocence claim is not cognizable on federal habeas review. The Eleventh Circuit's "own precedent does not allow habeas relief on a freestanding

_____

[5] Insofar as Huff attempts to raise an actual innocence claim in his Petition, such a claim is not cognizable in federal habeas proceedings; however, it may serve as a gateway through which an otherwise procedurally barred constitutional claim may be considered on the merits. See Cunningham v. Dist. Attorney's Office for Escambia Cnty., 592 F.3d 1237, 1273 (11th Cir. 2010) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding") (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)).

13

innocence claim in non-capital cases[.]" <u>Cunningham</u>, 592 F.3d at 1272 (citing <u>Jordan v. Sec'y, Dep't of Corr</u>., 485 F.3d 1351, 1356 (11th Cir. 2007)); <u>see</u> Response at 15-16. Thus, Huff is not entitled to relief on this claim.

## B. Ground Two

As ground two, Huff asserts that counsel (Assistant Public Defender Hedrick) was ineffective because he misrepresented the facts relating to the applicability of excusable homicide and withheld exculpatory evidence from Huff, which would have led Huff not to enter a plea, but instead proceed to a trial. Petitioner concedes that he has "procedurally defaulted" this ineffectiveness claim. <u>See</u> Petition, attached Memorandum of Law at 7. Moreover, Respondents contend, and this Court agrees, that the claim is procedurally barred since Huff never presented the claim to the state courts. <u>See</u> Response at 14-15. Petitioner has not shown either cause excusing the default or actual prejudice resulting from the bar. In attempting to demonstrate that he is not guilty of manslaughter and that the death of the victim was excusable homicide, Huff cites to Nurse Kilpatrick's medical progress notes,[6] as newly-discovered evidence of his actual innocence. Huff claims that he discovered the nurse's name and Kilpatrick's medical entry

---

[6] Nurse Kilpatrick reported the following in the progress notes: "[complaint] of headache. [large] hematoma on back of head. [Huff] given ice pack to apply to head. Will follow." Resp. Ex. EE, Progress Notes, Baker County Detention Center, dated October 29, 2002.

in late 2008 when the court granted his motion to supplement the post conviction record. <u>See</u> Petition at supplemental page 4-F; Resp. Exs. DD; EE. Notably, the October 29, <u>2002</u> date in the medical record appears to be a clerical error since the victim's death occurred on October 27, 2001, <u>see</u> Resp. Ex. C, the medical entry was apparently made two days after the victim's death, and defense counsel disclosed the medical record on August 27, 2002. <u>See</u> Petition at supplemental page 4-F; Response at 27; Resp. Ex. EE, Defendant's Discovery Disclosure, dated August 27, 2002. Most importantly, well before Huff entered his plea on September 9, 2002, he had reported his head injury to Investigator Harvey on October 27, 2001, <u>see</u> Resp. Ex. OO, Deposition of Steve Harvey, at 4, and to the jail nurse two days later on October 29, 2001, <u>see</u> Resp. Ex. EE, Progress Notes.

Nevertheless, assuming that Kilpatrick's medical entry is newly-discovered evidence, Huff has failed to show that it is more likely than not that no reasonable juror would have convicted him of the underlying offense in light of the new evidence. In sum, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. <u>See</u> Response at 25-30.

Additionally, even assuming the ineffectiveness claim is not procedurally barred, the claim is without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there

15

is a strong presumption in favor of competence. The presumption

that counsel's performance was reasonable is even stronger when, as

in this case, counsel is an experienced criminal defense attorney.[7]

The inquiry is "whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of

professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.

"[H]indsight is discounted by pegging adequacy to 'counsel's

perspective at the time' . . . and by giving a 'heavy measure of

deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S.

374, 381 (2005) (citations omitted). Thus, Petitioner must

establish that no competent attorney would have taken the action

that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d

1314, 1319-20 (11th Cir. 2003).

Given the record, counsel's performance was within the wide

range of professionally competent assistance. At the plea hearing,

counsel stated that Huff wished to enter a plea of nolo contendere

to the charge of manslaughter "as laid out in the information in

---

[7] "When courts are examining the performance of an experienced
trial counsel, the presumption that his conduct was reasonable is
even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316
(11th Cir. 2000) (en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001); <u>see</u>
<u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that
"[i]t matters to our analysis" whether the attorney is an
experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246
(2000). George Randolph Hedrick, III was admitted to the Florida
Bar in 1975. <u>See</u> http://www.floridabar.org. At the time he
represented Huff, Hedrick had been practicing law over twenty-five
years. At the October 14, 2002 hearing, Hedrick referred to his
lengthy criminal law career, stating: "I have had a lot of homicide
cases over the years." Resp. Ex. W at 25.

this case." Plea Tr. at 2. Huff affirmed that he and counsel had discussed the available defenses and issues relating to self-defense and justifiable or excusable homicide. Id. at 4. Moreover, at the October 14, 2002 hearing, counsel argued the mitigating circumstances of the case, in pertinent part:

> One would be that the victim was an initiator, a willing participant, aggressor or provoker of the incident, because I believe in this case Mr. Poss [(the victim)] to some extent was an initiator of the action directed towards him. I think that's a legitimate reason for the Court to go below the guidelines.
>
> This is not a situation where Mr. Huff ran up to Mr. Poss and struck him. In fact, I have agonized with Mr. Huff over this case for the last six months. I have been doing this for a long time, I have had a lot of homicide cases over the years. I have never had one that I felt was so close to being an excusable homicide as this one.
>
> Mr. Huff's version of the facts is that he was sitting there against the car engaged with Mr. Adams. The next thing he knows, Mr. Poss is running up, yelling at him, he turns instinctively and hits him. That set of facts, if the jury were to believe it, could well be a basis for an excusable homicide. And I have discussed that with Mr. Huff. We went over that and I have explained to him the dangers that, because that would be a factual defense the jury may or may not agree with. But in my mind I am convinced that of all the cases I have done over the years, this is as close to an excusable homicide as I have ever seen.

Resp. Ex. W at 25-26. Undoubtedly, at the time of Huff entered the plea on September 9, 2002, and at the time of the October 14, 2002

hearing, counsel had advised Huff on the issues relating to self-defense and justifiable homicide. Counsel cannot be faulted for allegedly failing to inform Huff about Kilpatrick's progress notes relating to the hematoma when Huff had reported his head injury to the jail nurse on October 29, 2001. See Resp. Ex. EE. Moreover, on the night of the homicide, Huff told Investigator Harvey that Yonn had struck him on the back of the head and that later someone else had hit him on the back of the head in the parking lot. Resp. Ex. OO at 2-4. Additionally, Huff had told counsel that, prior to hitting the victim, he had been in a physical altercation with Adams. Resp. Ex. W at 19-20. Indeed, Huff was fully aware that his head had been injured in altercations that night.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The State's evidence against Huff was substantial in that Yonn, Huff's co-worker, witnessed the altercation between the victim and Huff, see Resp. Ex. LL, Deposition of Allen Yonn, at 13-14, 28-30; Huff, in a videotaped interview with the police that night, admitted that he had swung and hit the victim, see Resp. Ex. OO at 2-4; Adams, another co-worker, described how Huff had hit and kicked him in the head that same night just prior to Huff's altercation with the victim, see

18

Resp. Ex. NN, Deposition of Martin E. Adams, at 8-10; and co-workers described Huff's involvement and demeanor that night, <u>see</u> Resp. Exs. LL; NN; OO, Deposition of Sheri Poss. If Huff had proceeded to trial and the jury had found him guilty of manslaughter, he would have faced a maximum of fifteen years of imprisonment. VOP Tr. at 29. Huff's entering the plea of nolo contendere to the charge of manslaughter on September 9, 2002, proved to be in his best interest since the court, on October 28, 2002, sentenced him to one year of jail time and ten years of drug offender probation. <u>See</u> Resp. Ex. F. However, as a result of Huff's violations of probation, the trial court revoked his probation and sentenced him to ten years and eight months of incarceration, which is the sentence that he is currently serving. Resp. Ex. Y, attached exhibit 5, Judgment, filed October 9, 2006; VOP Tr. at 37. Therefore, Huff's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## IX. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claim fails. <u>Knowles</u>, 129 S.Ct at 1420. In the alternative,

Petitioner's claims are without merit.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## X. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of
November, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 11/24
c:
Anthony Wade Huff
Ass't Attorney General (Heller)